May it please the Court, good morning. Jeff Suarez of Slevin and Hart for the Appellants, the Division 1181 ATU Pension Fund and its Board of Trustees. I'd like to begin with what this case is not about. Despite the hyperbole here, this case is not about the typical government contracting relationship, and the fund is not saying here that the typical government contracting relationship subjects the government to withdraw liability. Rather, this case presents a unique contractual arrangement and system where, pursuant to its own contracts, the DOE requires its contractors to participate in a particular pension fund, and specifically this pension fund, and requires the contractors to make contributions to this particular pension fund in specified amounts, all as terms and conditions of the DOE contract. Is there any specific agreement that requires the DOE, the city, to contribute as opposed to reimburse? Your Honor, there is not specific language that requires them to pay contributions. But you're relying, at least in part, maybe in large part, on the reimbursement obligation. Is that correct? As well as other theories. Yes, Your Honor, that's correct. There's the reimbursement provision and, as I just said, the fact that these contracts, particularly the DOE, is requiring through clear and expressed language of the contractor to make contributions to a specific fund in specific amounts and is funding those contributions. So on that point, why doesn't the logic of transpersonnel apply equally here? For two reasons, Your Honor. First, transpersonnel is distinguishable because the transpersonnel case was two employers that were arguing over liability. A pension fund was not involved. The pension fund was not making a claim for liability. But the issue of duty to reimburse as distinct from duty to contribute was an issue in that case, right? Yes, Your Honor. And it distinguished those two duties. And I would say one is not the other.  And I would say that the distinction in this case is that the contracts, again, in this particular case, require contributions to a particular pension fund in specific amounts. And I don't believe that was the case in transpersonnel. I believe that there was no language that specifically talked about contribution by the DOE. Correct. But in transpersonnel, all there was was a reimbursement provision. The contracts itself did not require payment of contributions as they do in this case. So that's how you purport to or propose to distinguish transpersonnel? One basis, yes, Your Honor. Well, is there another basis? Well, there's the general terms of the contract. Yes, it's requiring participation in a specific fund and requiring contributions in specified amounts. Can I ask you, isn't there a difference between the escorts and the bus drivers? Yes, Your Honor. I believe there is. With respect to the escorts, the contracts are quite clear that it is a pass-through situation. The DOE is obligated under the contracts to expressly reimburse the contractors for 100 percent of the contributions that they're requiring them to pay in the first place, and that's a line item. What happened? Did DOE didn't do that? Or did it for the escorts? That's what the contracts say. And again, most of the issues were dismissed at the 12B6 stage, so discovery was only permitted as to the alter ego. But I can tell the Court that the evidence and the testimony was, is that each of the Okay. I guess I don't understand. I know for the, it seemed to me that for the bus drivers, what's supposed to happen if the contribution wasn't made, the DOE was supposed to withhold payments, right? Yes, Your Honor. And every time they found out the payments weren't made, they didn't withhold the payments, they paid them. Yes, Your Honor. I mean, they withheld the payments from the going directly to the employer, right? Yes, Your Honor. You're referring to a provision of the contracts where it was an enforcement provision which states, the DOE states in the contracts that if the contractors do not make their contributions, then the DOE will withhold a portion of their service, the contractor's service check, and pay that money directly to the fund. Yes, Your Honor. And that happened when they were notified of the In instances, yes, but that really wasn't part of the facts and circumstances. I'm just trying to find out how we got to where they were. They're notified that the pension payments weren't made for the bus drivers. So we have that provision, and they're notified, hey, this wasn't made, they withhold it, they pay it in. At some point, they must have not been notified. I understand Your Honor's question. This case is not about a delinquent payment of contributions. Right. It's about a change in contract, right? Correct, Your Honor. Okay. It's about withdrawal liability. Right, because they didn't require that going forward, and the trust fund would like that obligation now to be imposed on DOE directly. Correct, Your Honor, I believe. The contractors went out of business. I'm listening. They withdrew from the fund and have withdrawal liability of the fund. And in this case, the pension fund is claiming that the DOE is also liable for that withdrawal liability. Is it a joint employer or a single employer under any? Correct. There are four theories. One is a contractual obligation to contribute. One is alter ego. One is joint employer. And one is single employer. Of those four, we've already gone through the contractual obligation, I think. Yes, Your Honor. But your second theory is the joint employer. That's correct, Your Honor. And I'd like to briefly address the joint employer theory. It is the joint employer theory arises under 29 U.S.C. 1392a2, which provides that an obligation to contribute can arise as a result of a duty under applicable labor management relations law. And the key issue here in this case is the meaning of the phrase applicable labor management relations law. This is an issue of first impression before this Court, as the only court that has directly addressed this issue is the Third Circuit and its decision in the CNS Wholesale Grocers case. I note that that case was decided after the district court rendered its decision on the joint employer issue. And in the CNS Wholesale Grocers case, the Third Circuit held that the phrase applicable labor management relations law, as used in the statute, is not restricted to the NLRA, but rather means labor management relations law generally. And the Court there based its decision on the Supreme Court's holding in the Bay Area Laundry case that an obligation to contribute under the statute can arise, and I quote, from general labor law prescriptions. And that's what we have here. That's what the joint employer doctrine is here, a general labor law prescription. Breyer. Is that a common law? Yes, Your Honor. Yes, Your Honor. It's a common law. Exactly. I mean, it's a common law prescription that is applicable to the DOE through the Federal Common Law and through ERISA, which incorporates labor law principles. What's the duty established by the joint employer doctrine? The duty is the common law duty is that when you have joint control of labor law, over the employees, that you have an obligation to contribute or it can be liable for withdrawal liability as an employer, as a joint employer. Doesn't that the joint employer doctrine just impose liability for violations of other labor or employment laws? Not as applied under ERISA. Maybe as applied under NLRA, but as applied under ERISA, it would, it would, it would make a joint employer liable for the liabilities of an employer under ERISA, as imposed by ERISA. And what's the source of that argument? The statutory source of that argument, Your Honor. Statutory. Do you have a case that what's your best case on that? Are you asking us to cite it? We've cited cases in the briefs that have imposed the joint employer doctrine under ERISA, and indeed, the district court first time around found that it was applicable. But I would refer the Court to Diddick, the son's contractors, 874 F. 2nd, 912. It's a Second Circuit case. And there are other cases cited in the briefs where district courts have, in fact, applied the joint employer doctrine under ERISA. I've got one more question. Yes, Your Honor. Please, for now. Let's assume that we disagree with you and determine that the DOE, well, that agree with the DOE that applicable labor management relations laws, as that is in 1392, refers to the NLRA. Okay? Just assume that for a second. How can you prevail? I mean, that is, if the DOE is exempt from the NLRA, how does it have a duty arising under that act? If the question is, is if the Court agrees that applicable labor management relations law only means the NLRA? Correct. ERISA does not – NLRA offers an exemption. My response would be, how could we prevail? This is an ERISA case. If the claim were brought under the NLRA, and this was an NLRA claim, I would agree that they're exempt. This claim is not brought under the NLRA. We've brought the claim under ERISA, and there is no such exemption under ERISA. I guess your answer is you wouldn't prevail under the NLRA, but – If this were an NLRA case and we were bringing an NLRA claim, I would agree that the DOE, the government, is exempt. They are not exempt under ERISA, and this is an ERISA case. I had a couple more. I wanted to finish my – okay. I want to go back to whether there was a contribution. Now, it seems to me that there is a difference between a contribution obligation between the escorts and the bus drivers. There really – when it came to the escorts, there was basically a pass-through obligation, in your view. There was – okay. How was there a pass-through obligation for the bus drivers? We weren't allowed to do discovery on the bus drivers because of the status. It was dismissed at the pleading stage. But I believe that discovery would show that the payments under the contracts, that the cost of the contributions were, in essence, baked in to the payments that were negotiated and received. And indeed, these contracts were in existence for 30 years. But we have each of these contracts for these contractors. If you look at the contracts in the record, there's 16 extensions. They're extended every five years. And every time they are extended, I believe that the discovery, if we were allowed to have it, would show that the prices paid under the extensions were – I guess, is the answer you're giving me that legally there is no difference between the issue of whether there was a contribution obligation? There is no difference between the bus drivers and the escorts? Are you saying they amount to the same thing? Your Honor, yes, they amount to the same thing. But I agree with Your Honor that the obligation in the contracts is much more direct and clear in the contracts because the contracts with respect to escorts expressly has the reimbursement provisions, and it is a line item of the reimbursement schedules which are attached to the contract. Thank you. Thank you. You've reserved three minutes, Mr. Swartz. Yes, Your Honor. Ms. Hill. Good morning, Your Honors. May it please the Court, Melissa Hill from Morgan Lewis & Bacchius on behalf of Apelli New York City Department of Education. The New York City Department of Education is a government entity, as you've heard, that contract – well, that in the first instance provides education to New York City school students. It contracts with dozens of private companies to provide school bus transportation services also for those students throughout New York City. Plaintiffs' claims seek to hold the DOE liable for the pension obligations of its private contractors, and those claims threaten to turn every manner of government contracting and, in fact, private contracting on its head. You – I think that Your Honors are correct to focus in the first instance on the contracts and whether there is a contribution obligation for the drivers or the escorts or both under the actual contracts. And the DOE's position, and I think the contracts are very clear, as Judge Castell correctly found, there is no such obligation in the contracts. The fund points to the reimbursement provision that, Judge Rastani, you've raised. The DOE's position in the first instance is that the fund did not raise this argument below. They did not point to this argument to the district court as a means by which the DOE is obligated to contribute. And they simply repackaged their contractual obligation claim now on appeal to point to this reimbursement provision and, in fact, fault the district court for not digging through the contract to find this particular schedule that includes that reimbursement – those reimbursement options. And I'll note that the reimbursement option does only apply to escorts and not to the bus drivers, and it is, in fact, an option under the contract, and it is not – it's not in every contract. Sotomayor, your adversary, Mr. Swires, said there was a line item, though, in the budgets with – or, sorry, in the – yeah, I guess in the budgets with respect to the contract. Sure. Your Honor, if I may, the reimbursement provision, if that's what the contractors select, if first they have escorts, because some of these companies didn't even have escorts, and second, if they elect the reimbursement rather than the – it's like a per diem option that they could have elected as payment, it's all in the contract. It's essentially a cost-plus contract, and it says we'll cover all these things plus an administrative fee. And one of those things listed among all the various other items is contributions, i.e., you have to pay the employees that are working on our contracts, but you have to pay the employees. And whether they're escorts or school bus drivers, there is nothing in these contracts that says the DOE will pay these employees or the DOE even employs these employees. And, in fact, the EPP, which is really the provision of the contract that the plaintiffs point to, the employee protection provision, sells – says very clearly the contract – the contractor shall contribute these amounts, and the contractor shall pay all such amounts to the fund. And all of the cases that interpret whether there's a contractual obligation to contribute started with Korea Shipping in 1989 from this Court, and every case that has interpreted Korea Shipping since has said that the Court is to look at the contracts and say, who has assumed the contractual obligation to contribute to the pension fund on behalf of these workers? Why don't you turn to the term applicable labor management relations laws? Absolutely, Your Honor. And I think that's separate than the contractual obligation question because it's a separate section of that – of 1392A. Applicable – You agree that that's another basis? Correct. Yes, absolutely. I agree that there are two basises. It's a contractual obligation, which we do not have here, or a duty arising under applicable labor management relations law. The Supreme Court has said, and Judge Castell found, that that means the NLRA or the Did the Supreme Court in that case exclude any other? No. And that's absolutely correct also, that the Supreme Court didn't say to the exclusion of anything else. And the Third Circuit case from 2015 that Mr. Swires points to as saying, well, it could be something else, was evaluating whether the Pension Protection Act was also a labor management relations law. I think the Court came out there and said that, well, it didn't apply there in that decision. But it comes down to whether there is a duty under a labor management relations law. And I think, Judge Loya, you pointed out correctly that even if this is some Federal common law doctrine that Mr. Swires is pointing to, there is no duty that's imposed on the DOE. I didn't point that out. I was just asking a question. Well, I think Your Honor asked the question whether this is a Federal common law doctrine. It seems to be that the plaintiffs are pointing to something along those lines. But in any event, the joint employer doctrine doesn't give rise to duties in and of itself. It imposes upon entities who could both be found to be employers under a particular statutory definition the obligations under that statute. So we were just in the previous case learning about or hearing about Title VII. Two entities could be deemed employers. Two different entities could be employers of the same entity. Is there any scenario under which the city, DOE or some other component of the city, could be deemed a joint employer, in your view, in the absence of some explicit contractual provision? Is Your Honor talking broadly, like in the Title VII? I'm testing the boundaries. Is there any scenario? Sure. Title VII, the FLSA, there are statutes that would hold that say this is what's an employer. And if two entities meet that definition of employer, they will be bound by the obligations under that statute. So if the DOE and some other entity. Is there any scenario outside the context of a particular statute where it would be appropriate to view the city, given how heavily it's involved in a particular area, as a joint employer? Your Honor, I don't think we can look at joint employer absent the statutory obligation. Your view is that we necessarily have got to tether the joint employer doctrine to a specific statute? I think that's how the joint employer doctrine is applied. I haven't seen it applied otherwise. So whether it's OSHA or the FMLA or the FLSA or Title VII, it all looks to, under those statutes, what does it mean to be an employer? And is there more than one entity that can qualify under that statute? So bringing it back to 1392a2, which is a duty under applicable labor management relations law, for joint employer to give rise to withdrawal liability or an obligation to contribute. Let's use the MPPAA or sort of any environmental law where there's potential liability based on joint employer status. And let's say that in this case, the city was so heavily involved that these contractors could not do anything without specific approval from the city in every case. Would that then qualify the city as or DOE as a joint employer? If this was an FLSA case, it could. If it was a Title VII case and they were alleging discrimination at the hands of their employer and the Title VII test was applied, certainly. But that's not this case. This case looks at an employer for purposes of a contractual obligation to contribute or a duty under labor management relations law. There's not a separate definition of employer where if the DOE was found to be a joint employer, it can be on the hook. The MPPAA just doesn't – it's not set up that way like Title VII, for example, is. And Title VII has a test like the FLSA has a test, like OSHA has a test, that looks to whatever it means to be an employer in those circumstances and whether two entities can together constitute one joint employer. Or occupy the same space. Occupy the same space, correct. And so for FLSA, for example, I don't have the test in front of me, but it looks to who is setting work standards and who is setting – who is paying wages and things like that. There's no allegation here that we're paying wages. And this is not an FLSA test in any event. There is not that type of test for joint employer status under the MPPAA because that's not what it means to be an employer under that statute. As Korea Shipping said, it's somebody with an obligation to contribute, a contractual obligation to contribute, or a duty under labor management relations law. And we come back to 1392A2, there is no duty that the DOE can be subject to under labor management relations law. I mean, there's no problem, is there, in contracting out of an obligation to make a contribution? No. Not under the law, no. And certainly the district court, I think, found that entities do that and other courts have found that as well. And that's why the Korea Shipping decision and the cases that have interpreted it look to what the contract says because parties contract for economic obligations all the time. I do have a couple more minutes left and I know that we didn't touch much on single employer alter ego. I'm happy to address any questions that your honors have before the plaintiff's rebuttal time. And then I would just ask then, your honors, that the court affirm the district court's finding in that regard, that the plaintiff cannot plausibly state a claim for single employer, that the DOE was the single integrated enterprise with each of these 11 companies, or that they, that the DOE acted as its alter ego. I do have one question about the single employer alter ego issue. So the district court let the alter ego issue go to proceed to summary judgment. Is that correct? That's correct. It did not do that with the single employer. That's also correct. Isn't there a slight contradiction there? Well, your honor, we took the position and we still take the position that the judge could have and should have dismissed both at rule 12 because the allegations just weren't there. But if you look at the two tests, even though the practical result is the same, that it binds one or more entities. You said that they're very similar. They are similar. But the single employer test, and I think if I read Judge Castell's decisions correctly, the single employer test looks to whether there's allegations that these entities act as a single integrated enterprise, not at arm's length, and that they constitute a single appropriate bargaining unit. And the court found that on that test, which is the distinct test for single employer status, the fund had not made those allegations at the rule 12 stage to say that these are a single integrated enterprise. The alter ego test, on the other hand, is more flexible. I would submit, and there are factors, five or six factors, depending on how you read the, how interrelated you read the factors, that none, no one of which is controlling, no one of which is dispositive. And on that more flexible test, the district court said, well, there's allegations of some of the factors, but not others, so we'll let this go forward. And I think that's how the, that's how you can reconcile the difference. Even though they're similar tests, I think there's some distinctions there that allowed the judge to get comfortable dismissing one on rule 12 and one on rule 56. I wanted to ask about the Seventh Circuit case, trans-personnel. Sure. Which you basically say controls, or we should adopt the same rationale. The obligation to reimburse for contributions made by another is not equivalent of an obligation to contribute in the first instance. And he says, your opponent says that case is distinguishable. And I think there are some facts that distinguish it. But what would you say are the key things that make it helpful to us? Sure. I think, again, it looks to the contractual language. And the obligation in the first instance, both in the trans-personnel case and in the case here, the obligation to contribute to the pension fund was on trans-personnel in that case, not roadway, and on the contractors in our case, not the DOE. And the court found no contractual, no assumption of that obligation in the party's arm's-length transactions, I mean, party's arm's-length contracts. So look to really what the source of the obligation was in the contract, and found that the reimbursement provision just said, we will reimburse you certain costs. If there's a shortfall, we're not making up for it. And that was something distinct that the court in the trans-personnel case found distinctive, that once you've made the contributions, we will reimburse. But if you don't make the contributions, we're not agreeing to make them on your behalf. We're not acting as your agent. We're not guaranteeing them. And in separate authority, a guarantor would not amount to a contributing obligor either. But I think those facts are distinctive in the trans-personnel case and apply equally here. Thank you. Thank you. Thank you, Ms. Hill. Mr. Swires. I realize we both have gone over, so I'll try to. This is helpful, at least to me. Just a few things. We've discussed the trans-personnel case and the reimbursement, and I just wanted to add or direct the court that the fund has cited cases in other jurisdictions that have found that, unlike the trans-personnel case, that a reimbursement obligation is an obligation to contribute. Those were the decisions from the Eastern District of Pennsylvania? That's correct, Your Honor. That's correct. Addressing quickly the joint employer doctrine again, it sounded to me like the DOE acknowledged joint employer status under any labor law for which it is not exempt. Let's take FLSA for example. I know that the FLSA applies the joint employer doctrine, and government entities are not exempt from the FLSA. With respect to the argument of the test, as I heard. Well, the test is employer status. If you're a joint employer, then you're exempt. A test, sorry, within the particular substantive inquiry. There's a test for what constitutes an employer. But there's still a test for what constitutes an employer under ERISA. I mean, that's what we're arguing about. But you're asking us, it seems to me, to identify an independent — identify the joint employer doctrine as providing some independent source of employer obligation, untethered to a statute. Well, it would be tethered to ERISA, again. So what's the test under ERISA for joint employer? The test under ERISA, under joint employer, is the same test the joint employer is to be a joint employer under NLRA or FLSA. It's whether you have — it's the same test. It's whether you have control, joint control over the employees. It's focused on the employees and the control over the employees, whereas like an alter case, it's focused on the employees and management, but it goes further and deals with ownership, equipment, and things like that. Now, your adversary also makes the argument that you did not raise the reimbursement issue? Yes, Your Honor. And I would like to disagree with that. I assume you would. In paragraph 70 through 77 of the First Amendment complaint, the Fund states many of the allegations that the DOE is responsible for the funding, and I believe it is paragraph 72 specifically. Did you raise that as subsequent to the filing of the complaint? Yes, I believe we did. As an argument. Yes, I believe we did, Your Honor. All right. Where did you raise it? We said — and I believe the motion dismissed, and then the arguments on appeal, we said that the DOE was responsible for funding the contributions specifically as to the escorts, and that's our position with respect to — So in the motion dismiss context? — the Korea shipping case, because the Korea shipping case, there was no express requirement that the carriers actually pay the contributions. The Court looked beyond that and found that the contractual language whereby the carriers were obligated to fund the contributions was sufficient for an obligation to contribute. Anything else? No, Your Honors. Thank you. I've given you both time. Thank you. Helpful arguments, and we'll reserve decision.